NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0386n.06

No. 09-3564

**FILED**
**May 28, 2009**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DANIEL E. WILSON,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **TED STRICKLAND, et al.,** | ) | **OPINION AND ORDER** |
| | ) | |
| *Defendants-Appellees.* | ) | |

**BEFORE:** **COLE, CLAY, and ROGERS, Circuit Judges.**

**PER CURIAM.** The State of Ohio has scheduled the execution of Daniel Wilson for 10:00 a.m. on Wednesday, June 3, 2009. On April 8, 2009, Wilson filed an action under 42 U.S.C. § 1983 in the federal district court for the Southern District of Ohio alleging that Defendants intend to violate his constitutional rights by executing him without providing the necessary safeguards to prevent the maladministration of the lethal injection protocol. On May 13, 2009, the district court issued an order granting the Defendants' motion to dismiss Wilson's § 1983 action as time-barred under this Court's decision in *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007) ("*Cooey II*") and denying as moot Wilson's motion for a preliminary injunction. *See* Opinion and Order, *Wilson v. Strickland*, No. 2:09-cv-271 (S.D. Ohio May 13, 2009) (Doc. No. 15). Wilson timely appeals from that decision. For the following reasons, we **AFFIRM** the decision of the district court.

-1-

## I. BACKGROUND

In 1992, Wilson was convicted of aggravated murder, kidnapping, and arson, and sentenced to death. *See State v. Wilson*, 659 N.E.2d 292, 300 (Ohio 1996). Following the affirmance of his death sentence by the state court of appeals and the Ohio supreme court, Wilson sought and was denied state post-conviction relief. *See State v. Wilson*, 684 N.E.2d 1221, 1222 (Ohio 1997); *State v. Wilson*, C.A. No. 97CA006683, 1998 WL 332940, at *1 (Ohio Ct. App. June 24, 1998); *State v. Wilson*, Nos. 09CA009559, 09CA009562, 2009 WL 1410733 (Ohio Ct. App. May 21, 2009). Wilson filed a motion to reopen his appeal on December 12, 1996. *See Wilson v. Mitchell*, No. 1:99-cv-0007, slip op. at *22 (Ohio Ct. App. Jan. 14, 2003). The court of appeals denied the motion as untimely in January 1997, and on October 22, 1997, the Supreme Court affirmed. *Id*.

On July 2, 1999, Wilson filed a petition for habeas corpus relief, which the district court denied. Opinion and Order, *Wilson v. Mitchell*, No. 1:99-cv-0007 (N.D. Ohio Jan.14, 2000) (Doc. No. 157). The district court granted a certificate of appealability ("COA") as to five of Wilson's claims. In April 2005, we granted the certificate as to a portion of one additional claim. *See* Order Granting COA in Part, *Wilson v. Mitchell*, No. 03-3362 (6th Cir. Apr. 4, 2005). Subsequently, we affirmed the denial of Wilson's habeas petition in full. *See Wilson v. Mitchell*, 498 F.3d 491 (6th Cir. 2007).

In July 2007, Wilson moved to intervene in a lawsuit filed by Richard Cooey alleging that Ohio's lethal-injection protocol constituted cruel and unusual punishment in violation of the Eighth Amendment. Motion to Intervene, *Cooey v. Strickland*, No. 2:04-cv-01156 (S.D. Ohio July 31, 2007) (Doc. No. 218). The district court granted Wilson's motion but ultimately dismissed Wilson's

Intervenor Complaint as barred by the statute of limitations under *Cooey II*. Order Granting Mot. to Dismiss, *Cooey v. Strickland*, No. 2:04-cv-1156 (S.D. Ohio Aug. 25, 2008) (Doc. No. 353).

In April 2009, Wilson filed the instant § 1983 action in district court claiming that the Defendants' likely maladministration of the protocol is violative of his Eighth and Fourteenth Amendment rights. Complaint, *Wilson v. Strickland*, No. 2:09-cv-271 (S.D. Ohio Apr. 10, 2009) (Doc. No. 6). Specifically, he claims that recent evidentiary hearings in *Biros v. Strickland*, No. 2:04-cv-1156 (S.D. Ohio May 11, 2009), revealed for the first time that the personnel charged with implementing Ohio's execution protocol lack the necessary knowledge and training to carry out the execution "without exposing him to a substantial risk of pain." (Merit Brief of the Appellant ("Wilson Br.") 20.) Wilson also moved to enjoin preliminarily his execution. *Wilson v. Strickland*, No. 2:09-cv-271 (S.D. Ohio Apr. 8, 2009) (Doc. No. 2). On April 22, 2009, Defendants moved to dismiss Wilson's complaint and deny the preliminary injunction, arguing that his claim is barred by res judicata and, alternatively, by the two-year statute of limitations applicable to § 1983 challenges to Ohio's execution protocol under *Cooey II*.

The district court dismissed Wilson's complaint as time-barred under *Cooey II* and expressly declined to consider whether his claims would also be barred by res judicata. *Wilson v. Strickland*, No. 09-cv-271, slip op. at *2, 6 (S.D. Ohio, May 15, 2009) (Doc. No. 15). The court explained that despite Wilson's assertion that his April 2009 complaint challenged only the administration of the protocol rather than the constitutionality of the protocol itself, "his action remains ultimately focused on the same form of constitutional violation that he should have brought within the limitations period." *Id*. at *6. The court then dismissed as moot Wilson's motion for a preliminary injunction.

*Id*.

## II. ANALYSIS

We review de novo a district court's dismissal of a complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Benzon v. Morgan Stanley*, 420 F.3d 598, 605 (6th Cir. 2005). In considering a motion to dismiss under Rule 12(b)(6), we "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Id*. (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002)). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Although the district court dismissed Wilson's complaint as barred by the applicable two-year statute of limitations, we conclude that the complaint is barred by the doctrine of res judicata. *See U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, *AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003) ("We may affirm a decision of the district court if correct for any reason, including one not considered below."). Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *See Montana v. United States*, 440 U.S. 147, 153 (1979). For res judicata to apply, the following four elements must be present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (emphasis omitted).

Here, given that the district court's 2008 dismissal of Wilson's Intervenor Complaint constitutes a final decision, and that the two actions involve identical parties, only the final two elements of the inquiry are at issue. *See Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) (holding that dismissal based on statute of limitations is a final judgment on the merits). We have explained that "[i]n order for the third and fourth elements to be satisfied, 'there must be an identity of the causes of action[,] that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *See Holder v. City of Cleveland*, 287 F. App'x 468, 470-71 (6th Cir. 2008) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "Where the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Id.* (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006)).

Wilson asserts that his current complaint differs from his previously dismissed Intervenor Complaint because it challenges the administration of the protocol rather than the protocol itself, and because it is based upon a different set of facts that "came about only in light of testimony in the *Biros* hearing on March 23-27, 2009." (Reply Merit Brief of the Appellant ("Pl. Reply") 1.) However, Wilson's argument is belied by the plain language of his Intervenor Complaint, which sets forth a comprehensive challenge to the "procedures, practices, policies, protocols and/or means for accomplishing" his execution. The Intervenor Complaint states, in relevant part:

> Defendants have *created, maintained and implemented* a method of execution (i.e. lethal injection), and *procedures, practices, policies, protocols and/or means for accomplishing* that method of execution, which if utilized in Plaintiff's case, will

subject Plaintiff to an unlawful deprivation of his constitutional rights, including his right to be free from cruel and unusual punishment.

Specifically included within this complaint is a constitutional challenge under § 1983 to the Defendant's adoption and anticipated use of DRC Policy No. 01-COM-11 . . . *and any other procedures, practices, policies, protocols and/or means for accomplishing Plaintiff's execution by lethal injection that are or might be adopted* . . . which are the same as or similar to the DRC Execution protocol in those respects challenged herein.
. . .

Defendants . . . have failed . . . to create, maintain, and implement procedures, practices, policies, protocols and/or means for carrying out an execution by lethal injection that would allow for Plaintiff's execution by lethal injection to occur in a manner and by means that would not violate his constitutional rights.
. . .

The use of [the] three drugs specified in the DRC Execution Protocol . . . and the *manner in which those drugs are to be administered*, create an undue risk that Plaintiff will be subjected to extreme, excruciating and unnecessary pain and suffering . . . .

The Defendants have failed to incorporate into the DRC Execution Protocol a requirement that the personnel assigned to establish and maintain the intravenous lines are *properly trained*. Further Defendants have made *insufficient preparation* for the *real possibility*, encountered, for example, in the execution of Joseph Clark on May 2, 2006, that access to Plaintiff's veins cannot be successfully established or maintained . . . .

The DRC Execution Protocol does not disclose all of the material details surrounding the process by which an inmate sentenced to die will be executed pursuant to lethal injection; nor have the Defendants disclosed the details surrounding the qualifications and training of the personnel involved in the administration of lethal injection. *Accordingly, as more information about the process is made available to Plaintiff through discovery in this litigation or otherwise, Plaintiff reserves the right to make additional constitutional challenges to the DRC Executive Protocol and to any other procedures, practices, policies, protocols, and/or means Defendants intend to employ in carrying out Plaintiff's execution* . . . .

*Likewise, the DRC Execution Protocol does not require that a person with adequate medical training administer and monitor the execution so as to detect whether a*

> *condemned inmate is suffering pain and if so to determine whether and what appropriate medical steps may be taken to alleviate the pain.*

*See* Proposed Intervenor Complaint, *Wilson v. Strickland*, 2:04-cv-01156-GLF-MRA, ¶¶ 21-26, 27, 29 (Doc. 218-2) (July 21, 2007) (emphasis added).

Despite Wilson's arguments to the contrary, his two complaints raise the same basic challenge—that the Defendants' personnel are not adequately qualified or prepared to execute him within the parameters permitted by the Constitution. For instance, the Intervenor Complaint challenged the training of the individuals "assigned to establish and maintain the intravenous lines" that will be used to execute him, and the "manner in which [the] drugs are to be administered." (*See* Intervenor Complaint ¶ 26). In addition, his earlier complaint cited Defendants' poor administration of the execution protocol in the execution of Joseph Clark—a claim that is repeated in the current complaint. (*See* Intervenor Complaint ¶ 26; Complaint ¶ 33(d)). Further, although Wilson claims that his current complaint is "predicated on information revealed publicly for the first time during the [*Biros*] evidentiary hearing" (Complaint ¶ 34), we have virtually no evidence indicating that the same information would not have been available through discovery in his prior suit. Accordingly, Wilson's argument that his prior suit challenged "the constitutionality of the protocol" while his current suit targets the State's ability to adhere to and properly administer the protocol is merely a matter of semantics rather than a substantive distinction.

The fourth element of res judicata is also met. Wilson's current complaint is based on the same assertion as was set forth in his intervenor complaint—that the manner in which the Defendants intend to execute him could result in a painful death in violation of his constitutional rights. Wilson

may not re-litigate a claim that the lower court has already dismissed in a previous case (and that he declined to appeal). Therefore, because all four requirements of res judicata are met, Wilson's claim is barred, and we need not reach his argument that the district court erred in finding his complaint time-barred under *Cooey II*.

We must also consider Wilson's motion to stay his execution. "[A] stay of execution is an equitable remedy." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). We analyze the following factors in deciding whether to grant Wilson a stay of execution:

> (1) whether there is a likelihood he will succeed on the merits of the appeal; (2) whether there is a likelihood he will suffer irreparable harm absent a stay; (3) whether the stay will cause substantial harm to others; and (4) whether the injunction would serve the public interest.

*See Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007) (citing *Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004)). A stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. Thus, Wilson "must show a 'significant possibility of success on the merits' . . . to obtain a stay." *Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007) (quoting *Hill*, 547 U.S. at 584). Given our conclusion that the district court properly dismissed Wilson's complaint, he has not met his burden to show a significant possibility of success on the merits. Therefore, his motion to stay the execution is denied.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court granting Defendants' motion to dismiss and **DENY** Wilson's motion to stay his execution.